IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBIN J. JOHNSON, | ) | Case No. 1:18-cv-1656 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | THOMAS M. PARKER |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | **MEMORANDUM ORDER** |
| | ) | **AND OPINION** |
| Defendant. | ) | |

**I.     Introduction**

Plaintiff, Robin J. Johnson, seeks judicial review of the final decision of the Commissioner of Social Security, denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XIV of the Social Security Act. This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and the parties consented to my jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. ECF Doc. 13. Because the Administrative Law Judge ("ALJ") did not apply proper legal standards and did not reach a decision supported by substantial evidence, the Commissioner's final decision denying Johnson's applications for disability insurance benefits and supplemental security income must be VACATED and the matter REMANDED for further proceedings consistent with this memorandum of opinion and order.

## II. Procedural History

On April 30, 2015, Johnson applied for DIB and SSI. (Tr. 212-22).[1] Johnson alleged that she became disabled on July 1, 2013, due to arthritis, high blood pressure, back problems, neck problems, anxiety/nerves, and knee problems. (Tr. 104, 117, 132, 146, 212, 216). The Social Security Administration denied Johnson's applications initially and upon reconsideration. (Tr. 104-161). Johnson requested an administrative hearing. (Tr. 176-78). ALJ Susan Giuffre heard Johnson's case on May 23, 2017, and denied the claims in a November 9, 2017, decision. (Tr. 21-81). On May 24, 2018, the Appeals Council denied further review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-6). On July 18, 2018, Johnson filed a complaint to challenge the Commissioner's decision. ECF Doc. 1.

## III. Evidence

### A. Personal, Educational and Vocational Evidence

Johnson was born on December 22, 1950, and she was 62 years old on the alleged onset date. (Tr. 212, 216). Johnson was a high school graduate, and she had a bachelor's degree in social work and master's degree in human service administration. (Tr. 47, 248). Johnson had previous work experience as an "office helper." (Tr. 48-49, 49-62, 65-69).

### B. Relevant Opinion Evidence

#### 1. State Agency Consultants

On June 29, 2015, state agency consultant Gerald Klyop, MD, assessed Johnson's physical residual functional capacity ("RFC") based on a review of the medical record. (Tr. 112-14). Dr. Klyop opined that Johnson could lift up to 20 pounds occasionally and 10 pounds frequently, stand and/or walk for up to 4 hours, and sit for a total of 6 hours in an 8-hour workday. (Tr. 112). He stated that Johnson was limited to occasional operation of foot

---

[1] The administrative transcript is in ECF Doc. 11.

2

controls bilaterally and standing/walking due to knee pain. (Tr. 112). Dr. Klyop also stated that Johnson could occasionally climb ramps/stairs, stoop, kneel, crouch, crawl; never climb ladders/ropes/scaffolds; and frequently balance. (Tr. 112-13). He stated that Johnson needed to avoid concentrated exposure to extreme cold and avoid all exposure to "hazards, heights, dangerous machinery and commercial driving due to back pain which radiates into both legs and [osteoarthritis] in knees." (Tr. 113). Dr. Klyop noted that medical evidence showed that Johnson could not stand and walk for prolonged periods of time, but she could "walk without assistance for short distances" and "maintain adequate strength to perform some types of limited work activities." (Tr. 116). On December 30, 2015, Gary Hinzman, MD, concurred with Dr. Klyop's opinion. (Tr. 141-45).

>     2.      **Consultative Examiner**

On August 20, 2015, consultative examiner Alison Flowers, Psy.D., completed a psychological evaluation. (Tr. 369-76). In relevant part, Dr. Flowers noted that Johnson verified her identity with her Ohio driver's license, "typically [got] around by driving," and "drove to the appointment." (Tr. 369, 372). Johnson also told Dr. Flowers that she had last worked as a pre-school teacher in June 2015, and that she was able to do laundry, cook and prepare food, do general cleaning, and occasionally shop. (Tr. 371-72).

>     3.      **Third Party Report—Ramona Washington**

On March 27, 2017, Ramona Washington, Johnson's friend, completed a third-party function report. (Tr. 329-36). Washington stated that she saw Johnson twice a week, and they would talk, watch TV, shop, relax, and pray. (Tr. 329). Washington said she did not know what Johnson did on a typical day, but that her activity level and personal grooming had declined. (Tr. 330). Washington stated that Johnson drove her car, "but only if she ha[d] to drive." (Tr. 332).

3

### C. The ALJ Hearing

Johnson testified at the ALJ hearing. (Tr. 47-58). Johnson's doctor prescribed a cane to help her with imbalance and insecurity while walking, and she used it when she went out and at home. (Tr. 50). Johnson said that she could not stand or walk for four hours per day, because standing and walking for long periods gave her discomfort. (Tr. 54). Johnson said that she could sit comfortably for 30 to 45 minutes until she had to "get up or ease [her]self." (Tr. 54).

Johnson testified that she worked as a preschool teacher from 2013 through 2015, but only during the school year. (Tr. 47-48). She also worked as an "office coordinator" for the state of Illinois. (Tr. 48). In that position, Johnson found files for workers, picked up and distributed mail, picked up documents from other agencies, filled out applications, and helped parents get child support. (Tr. 48-49). She sometimes had to drive to the courthouse to get documents. (Tr. 49).

Johnson testified that she reduced her work and eventually stopped working due to knee problems, cervical spine problems, difficulty turning her head, anxiety, and heart problems. (Tr. 51-52). She said that her knee pain was the most limiting, and that she used injections and medications to help control her pain. (Tr. 52-53). Her neck problems caused her to have difficulty looking from side-to-side, but they did not cause headaches. (Tr. 55).

Deborah Lee, a vocational expert ("VE"), also testified. (Tr. 58-77, 79). The VE asked for clarification regarding Johnson's "office coordinator" work. (Tr. 59). Johnson stated that her primary responsibility as an office coordinator was not processing child support applications, but overseeing everything from making sure the applications were filled out correctly to gathering supporting documents. (Tr. 59-61). Johnson said that, after she finished gathering all the documents, she gave the application packages to case workers and helped them with whatever they needed done. (Tr. 59-62). Based on Johnson's clarification testimony, the VE classified

4

her prior work as a "case aide." (Tr. 62). The VE said that Johnson's prior work as a case aide was light work, and light work included any work that required driving, such as driving to other agencies to pick up papers. (Tr. 63).

The ALJ asked the VE whether a hypothetical individual with Johnson's age, experience, and education, could perform Johnson's previous work if she:

> could perform light work, but standing and walking is limited to four hours of eight, sitting six hours of eight, with a capacity to use bilateral lower extremities occasionally to operate foot controls, who could occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, frequently balance, occasionally stoop, kneel, crouch, crawl, who would have to avoid concentrated exposures to extreme cold and avoid all exposure to hazards, such as industrial machinery, unprotected heights, and commercial driving.

(Tr. 63). The VE testified that such an individual could perform Johnson's prior work as a case aide. (Tr. 63). The VE also said:

> commercial driving is something where you have a commercial driving license, and you have several different classifications, and it goes to the weight of the vehicle, whether you're, like, transporting passengers, like in a van. So the job did not require commercial driving. It did require driving of her own car, so if you don't mean commercial driving as I understand it to be, like, a class – a commercial driving license, then this job did not require a commercial driving license.

(Tr. 63-64). The VE testified that, because case aide work does not require commercial driving and would not be impacted by Johnson's use of a cane to walk and stand, she could perform the requirements of case aide work as generally performed. (Tr. 64).

On cross-examination by Johnson's attorney, the VE stated that she chose "case aide" as the generic title, based on the description that she "[p]erform[ed] community contact work or simpler aspects of programs or cases that assists and provides services to clients . . . and especially since she said everyone there had a degree." (Tr. 66). Johnson's attorney noted that Johnson did not testify that those were her job requirements. (Tr. 67). Johnson testified that she did not rely on any of her education or training in performing her prior work, and that she did not

5

have any impact on case workers' decisions. (Tr. 67-68). Based on Johnson's additional testimony, the VE reclassified her prior work as "office helper, with minimal cognitive responsibility." (Tr. 69). The VE stated that the "office helper" position could involve driving to pick up or deliver items to other businesses, but it would not be classified as "commercial driving." (Tr. 70).

Johnson's attorney argued that "commercial driving" did not mean "CDL driving." (Tr. 70). Instead, counsel argued that by limiting Johnson to "no commercial driving," the state agency consultants meant that she could not do any driving for work purposes. (Tr. 70). The VE testified that:

> the term commercial driving is – requires a special license, and there are several different levels for commercial driving, so commercial . . . driving is driving different sized trucks, whether you get a Class A, Class B, whether you have HAZMAT, whether you have transportation of passengers, so commercial driving is different than driving a private car. So for example, a vocational caseworker going out to see clients, I would not call that commercial driving. Yes, you are driving – I'll tell you why it makes a difference. You're only required to have a license to drive your car, even though you are driving for your business. You maintain a license in good standing, and then some employers will look at your driving record for speeding, check for DUIs, but it does not require a special license, other – above and beyond what you would normally have to drive your own car, so that's why it's not considered commercial driving, but you have a license to drive a car.

(Tr. 72). The VE noted that "commercial driving" was not defined in the social security regulations, but that the description she gave above was consistent with her experience from a vocational perspective. (Tr. 73). Counsel again asserted that Johnson's driving in her prior work was "commercial driving," because she was driving for business purposes and her employer would have been responsible for any damage or injuries she caused while driving. (Tr. 74). The VE noted that she had originally heard "CDL" in the ALJ's hypothetical question, wrote "CDL" in her notes as shorthand for "commercial driving," and based her testimony on that understanding. (Tr. 75-77). The VE noted that her definition of "commercial driving" could be

6

different from other VEs, and that she would put it on the list for her colleagues to address. (Tr. 79). The ALJ said that she would "have to think about" whether the kind of driving involved in Johnson's prior work was "commercial driving" or "private driving." (Tr. 77).

Johnson further clarified that her prior employer "didn't ask [her] how she was going to get" places or "ma[d]e provision for how [she] got there or how [she] came back." (Tr. 78). Instead, Johnson said that her prior employer was only "concerned about [her] bringing the package[s] or getting the documents needed for them." (Tr. 78).

## IV. The ALJ's Decision

The ALJ's November 9, 2017, decision found that Johnson was not disabled and denied her applications for DIB and SSI. (Tr. 24-37). The ALJ found that Johnson had not engaged in substantial gainful activity since July 1, 2013, the alleged onset date. (Tr. 26). The ALJ found that Johnson had the severe impairments of: major joint dysfunction of the bilateral knees, degenerative disc disease of the lumbar and cervical spine; osteoarthritis; and obesity. (Tr. 27). The ALJ determined that Johnson had no impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 28-29). The ALJ also determined that Johnson had the RFC to perform light work, except that:

> she can stand and/or walk for four hours in an eight-hour workday, sit for six hours in an eight-hour workday and occasionally use her bilateral lower extremities to operate foot controls. She can occasionally climb ramps and stairs, can never climb ladders, ropes or scaffolds, frequently balance, and occasionally stoop, kneel, crouch, and crawl. She must avoid concentrated exposure to extreme cold and must avoid all exposure to hazards such as industrial machinery, unprotected heights and commercial driving.

(Tr. 29). In assessing Johnson's RFC, the ALJ "considered all symptoms" in light of the medical and other evidence. (Tr. 30). Specifically, the ALJ stated that she gave great weight to Dr. Kylop's and Dr. Hinzman's opinions. (Tr. 34).

7

The ALJ found that Johnson was "capable of performing past relevant work as a case aide" as actually and generally performed, which did "not require the performance of work-related activities precluded by the claimant's residual functional capacity." (Tr. 35-36). The ALJ explained that:

> the vocational expert testified the claimant would be able to perform past work as a case aide as actually and generally performed. . . . The record establishes that the claimant worked as a case aide (office coordinator) for the State of Illinois Comptroller. . . . [and] the record establishes that the claimant performed this work within the last 15 years, earned enough income for the position to qualify as substantial gainful activity, and performed it for a period long enough to have learned the required duties.

(Tr. 36). In light of her findings, the ALJ determined that Johnson was not disabled from July 1, 2013, through the date of her decision and denied Johnson's applications for DIB and SSI. (Tr. 36-37).

## V.   Law & Analysis

### A.   Standard of Review

The court's reviews the Commissioner's final decision to determine whether it was supported by substantial evidence and whether proper legal standards were applied. 42 U.S.C. §§ 405(g), 1383(c)(3); *Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003). Substantial evidence is any relevant evidence, greater than a scintilla, that a reasonable person would accept as adequate to support a conclusion. *Rodgers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Under this standard, the court does not decide the facts anew, evaluate credibility, or re-weigh the evidence. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). If supported by substantial evidence and reasonably drawn from the record, the Commissioner's factual findings are conclusive – even if this court would reach a different conclusion or evidence could have supported a different conclusion. 42 U.S.C. §§ 405(g), 1383(c)(3); *see also*

8

*Elam*, 348 F.3d at 125 ("The decision must be affirmed if . . . supported by substantial evidence, even if that evidence could support a contrary decision."); *Rogers*, 486 F.3d at 241 ("[I]t is not necessary that this court agree with the Commissioner's finding, as long as it is substantially supported in the record."). This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without being second-guessed by a court. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Even if supported by substantial evidence, however, the court will not uphold the Commissioner's decision when the Commissioner failed to apply proper legal standards, unless the error was harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and [when] that error prejudices a claimant on the merits or deprives the claimant of a substantial right."); *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) ("Generally, . . . we review decisions of administrative agencies for harmless error."). Furthermore, the court will not uphold a decision, when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Charter*, 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-CV-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue*, No. 2:10-CV-017, 2010 U.S. Dist. LEXIS 72346- (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-CV-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010). Requiring an accurate and logical bridge ensures that a claimant will understand the ALJ's reasoning.

The Social Security regulations outline a five-step process the ALJ must use to determine whether a claimant is entitled to benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her RFC; and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden to produce sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. §§ 404.1512(a), 416.912(a).

**B.     Past Relevant Work**

Johnson argues that the ALJ failed to apply proper legal procedures and reach a conclusion supported by substantial evidence in determining that she could perform her past relevant work at Step Four. ECF Doc. 14 at 5-13. First, Johnson asserts that the ALJ failed to apply proper legal procedures because she did not adequately explain whether the "no commercial driving" limitation only precluded work that required a CDL or all "driving for the purposes of commerce." *Id.* at 8-11. Johnson contends that, if she were limited from taking jobs that required her to drive at all, she could not perform her past work. *Id.* Further, she asserts that the ALJ's failure to adequately explain what she meant by "no commercial driving" precludes meaningful review. *Id.* at 7, 11. Second, Johnson argues that the ALJ's conclusion – that she could perform her past work as a "case aide/office coordinator" – was not supported by substantial evidence, because VE reclassified her past relevant work as "office helper." *Id.* at 11-13. Johnson asserts that the ALJ's failure to discuss her past work's reclassification "makes it

10

impossible to determine whether the ALJ considered and rejected [the VE's] testimony or simply overlooked it." *Id.* at 12. Johnson also contends that the reclassification of her past work should have resulted in a finding that she was disabled, because an "office helper" is unskilled work and the medical-vocational guidelines direct a "disabled" finding for a person who is closely approaching advanced age, has a high school education, has unskilled past work, and is limited to light work. *Id.* at 13.

The Commissioner responds that the ALJ's "no commercial driving" limitation was sufficiently specific without further explanation, and that substantial evidence supported the ALJ's finding that Johnson could perform her past relevant work as a "case aide/office helper." ECF Doc. 16 at 9-12. The Commissioner argues that the VE had explained that "commercial driving" meant driving a passenger vehicle or other driving that required a special license, and did not include the "incidental driving" that Johnson's past work required. *Id.* at 9-10, 12. The Commissioner also contends that substantial evidence supported the conclusion that Johnson could perform "incidental driving," including Washington's third-party report and Dr. Flowers' August 2015 report. *Id.* at 10. Further, the Commissioner asserts that the ALJ's failure to discuss the VE's reclassification of Johnson's past work was harmless, because the VE's testimony that Johnson could perform her past work as actually performed provided substantial evidence to support the ALJ's finding that she was not disabled – regardless of whether her past work is classified as "case aide" or "office helper." *Id.* at 11-12. Finally, the Commissioner asserts that the court should reject Johnson's argument that the reclassification of her work as an "office helper" entitled her to a disability finding under the medical-vocational guidelines. *Id.* at 10-11.

At Step Four of the sequential analysis, the claimant must prove that she cannot perform her past relevant work as actually or generally performed. 20 C.F.R. §§ 404.1520(a)(4)(iv),

11

416.920(a)(4)(iv); *Studaway v. Sec'y of Health & Hum. Serv.*, 815 F.2d 1074, 1076 (6th Cir. 1978) (noting that the claimant "must prove an inability to return to his former type of work and not just to his former job"). In evaluating whether the claimant can perform her past relevant work, the ALJ must make specific factual findings regarding: (1) the claimant's RFC; (2) the physical and mental demands of the past job/occupation; and (3) whether the claimant's RFC would permit a return to his or her past job or occupation. SSR 82-62, 1982 SSR LEXIS 27 *10 (Jan. 1, 1982). The ALJ's "decision must be written so that a clear picture of the case can be obtained . . . [,] show clearly how specific evidence leads to a conclusion . . . [,] describe the weight attributed to the pertinent medical and nonmedical factors in the case[,] and reconcile any significant inconsistencies." *Id.* at *9-10; *see also Bailey v. Comm'r of Soc. Sec.*, No. 98-3061, 1999 U.S. App. LEXIS 1621 *12-13 (6th Cir. 1999); *Robinson v. Sec'y of Health & Hum. Serv.*, No. 87-1775, 1988 U.S. App. LEXIS 14524 *8 (6th Cir. 1988). The ALJ's reasoning must be, at a minimum, sufficiently clear to permit meaningful appellate review. *Bailey*, No. 98-3061, 1999 U.S. App. LEXIS 1621 *12 (citing *Hurst v. Sec'y of Health & Hum. Serv.*, 753 F.2d 517, 519 (6th Cir. 1985)).

The ALJ failed to apply proper legal procedures and reach a decision supported by substantial evidence in evaluating whether Johnson could perform her past relevant work. 42 U.S.C. §§ 405(g), 1383(c)(3); *Elam v. Comm'r of Soc. Sec.*, 348 F.3d at 125. Here, the ALJ failed to articulate sufficiently specific factual findings regarding Johnson's driving limitations. SSR 82-62, 1982 SSR LEXIS 27 *9-10. Although the ALJ stated that Johnson had to avoid "commercial driving," both Johnson and the VE noted during the hearing that the limitation was ambiguous and that conflicting interpretations of "commercial driving" could exist. (Tr. 63-64, 70-79). In light of the ALJ's nondelegable duty to determine Johnson's RFC – which includes the duty to articulate the functional limitations that reduced her ability to work – the ALJ should

12

have provided further guidance to the VE regarding what she meant when her hypothetical question precluded "commercial driving." *See* 20 C.F.R. §§ 404.1527(d)(1)-(2), 404.1545, 416.927(d)(1)-(2), 416.945 (describing the ALJ's nondelegable duty to determine a claimant's RFC). Alternatively, the ALJ might have explained in her written decision that she adopted the VE's interpretation of "commercial driving" and stated that Johnson could not perform any driving that required special licensure, such as a CDL or an endorsement to drive passenger vehicles. *See* (Tr. 72). Instead, the ALJ remained silent on that matter, thereby failing to reconcile a significant inconsistency in the interpretation of Johnson's limitations. SSR 82-62, 1982 SSR LEXIS 27 *9-10; *Bailey*, No. 98-3061, 1999 U.S. App. LEXIS 1621 *12-13; *Robinson*, No. 87-1775, 1988 U.S. App. LEXIS 14524 *8; *see also* (Tr. 77) (ALJ stating that she would "think about" what she meant by "commercial driving"). Moreover, because the record is not sufficiently clear to allow a reviewing court to determine what the ALJ meant when she limited Johnson to "commercial driving," the ALJ's decision is not sufficient to permit meaningful appellate review. *Bailey*, No. 98-3061, 1999 U.S. App. LEXIS 1621 *12; *Hurst*, 753 F.2d at 519. Therefore, the ALJ failed to comply with the regulations in determining whether Johnson's limitations precluded her from performing her past relevant work.

Furthermore, substantial evidence did not support the ALJ's conclusion that Johnson was able to perform her past work as a "case aide/office coordinator." The ALJ was permitted to rely on the VE's testimony that, in light of Johnson's RFC, age, experience, and education, she was able to perform her past work. *Cf. Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (holding that an ALJ may rely on VE testimony regarding the claimant's ability to perform specific jobs). Nevertheless, after the VE testified that Johnson could perform her past work as a "case aide," the VE heard additional testimony from Johnson and reclassified her past work as "office helper." Here, the ALJ should have asked whether the VE's testimony that Johnson

13

could perform her past work changed after the reclassification.  The distinction here is important, because different positions with common characteristics may involve different functional demands and duties requiring varying abilities and job knowledge.  *Cf.* SSR 82-61, 1982 SSR LEXIS 31 *3 (noting that an ALJ cannot base his past work finding on general classifications, because jobs that "have common characteristics . . . often involve quite different functional demands and duties requiring varying abilities and job knowledge").  Because the ALJ did not request – and the VE did not offer – such testimony, the VE's testimony did not support a conclusion that Johnson could perform her past work as an "office helper."  Thus, the ALJ did not build an accurate and logical bridge between the evidence and his conclusion that Johnson could perform her past relevant work.  *Fleischer*, 774 F. Supp. 2d at 877.

Finally, because the ALJ did not proceed to Step Five to determine whether Johnson could perform any other work in the national economy, her failure to apply proper legal procedures and reach a conclusion supported by substantial evidence in determining that Johnson could perform her past relevant work was not harmless error.  *Bowen*, 478 F.3d 742; (Tr. 37).

## VI. Conclusion

Because the ALJ did not apply proper legal standards and did not reach a decision supported by substantial evidence, the Commissioner's final decision denying Johnson's applications for disability insurance benefits and supplemental security income must be VACATED and the matter REMANDED for further proceedings consistent with this memorandum of opinion and order.

Dated: May 28, 2019

Thomas M. Parker
United States Magistrate Judge